**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Center for the Employment of the Disabled,<br><br>Plaintiff,<br><br>vs.<br><br>Richard M. Ross; Judith B. Ross, individually and as Trustee of the Judith B. Ross Revocable Trust and the Judith B. Ross Irrevocable Trust; Tamarack Insurance, LLC; and Tamarack Capital, LLC,<br><br>Defendants. | No. CV 05-2014-PHX-JAT<br><br>**ORDER** |

Pending before the Court is the Plaintiff's Motion for Partial Summary Judgment (doc. 36) and the Defendants' Cross-Motion for Summary Judgment (doc. 47).

I.   INTRODUCTION

Defendant Richard Ross ("Mr. Ross") was a member of Tamarack Capital, LLC, and Tamarack Insurance, LLC ("the Tamarack Entities"). Both are Arizona limited liability companies. The Tamarack Entities and Access Healthsource, Inc. ("Access") entered into a contract. On July 31, 1998, the Tamarack Entities filed suit in Maricopa County Superior Court against Access.[1] Access removed the case to Arizona District Court.[2] Access

---

[1] Maricopa County Superior Court Cause No. CV-98-13791.

[2] Arizona District Court Cause No. CV-1572-PHX-ECH.

subsequently filed a counterclaim against the Tamarack Entities and added Mr. Ross as a counter-defendant.

On April 26, 1999, a group of Access' shareholders ("the Texas County Court plaintiffs") filed suit against Mr. Ross and two other defendants in Texas County Court (Cause No. 99-1459). Mr. Ross failed to answer the complaint or make an appearance. Therefore, on January 21, 2000, the Texas County Court entered default judgment against Mr. Ross in the amount of $10,000,000, plus pre-judgment interest in the amount of $369,863, post-judgment interest at 10% per year until paid, and $15,000 in attorney's fees. The Texas County Court mailed Mr. Ross a notice of default judgment on February 1, 2000, to an address in Arizona provided by the Texas County Court plaintiffs. Mr. Ross did not live at that address.

On March 3, 2000, the Texas County Court severed the remaining defendants and that case proceeded under a new case number, Cause No. 2000-764. The Texas default judgment against Mr. Ross in Cause No. 99-1459 became final.

Richard Ross and Judith Ross reside in Arizona. The Tamarack Entities are also located in Arizona. As a result, on March 31, 2000, the Texas County Court plaintiffs filed the Texas default judgment in the Maricopa County Superior Court[3] seeking to enforce it as a foreign judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, Ariz. Rev. Stat. Ann. (A.R.S.) section 12-1701 (West 2003 & Supp. 2004).

On April 12, 2000, Mr. Ross wrote a letter to his attorney in the Arizona District Court litigation stating that he had been forwarded a notice of default judgment, but that he had never been served in the Texas County Court action and had never lived at the address listed by the Texas County Court as his address of record. Mr. Ross did not have notice of the default judgment prior to April 12, 2000.[4]

---

[3] Maricopa County Superior Court Cause No. CV 2000-006173.

[4] Agreed Factual and Document Stipulations in Cause No. 2003-080, Texas County Court.

On April 17, 2000, Mr. Ross filed a motion to vacate the foreign judgment in the Maricopa County Superior Court,[5] pursuant to Ariz. R. Civ. P. 60(c), on the ground that he had never been served with a summons or complaint in the Texas County Court case.[6]  On August 8, 2000, the Maricopa County Superior Court found insufficient service of process on Mr. Ross and ordered "that the foreign judgment filed herein by plaintiffs in Cause No. 99-1459 in the County Court at Law Number 7, El Paso County, Texas, is void and hereby vacated."

On October 27, 2000, the Texas County Court plaintiffs amended the previously severed Texas County Court Cause No. 2000-764 and added Mr. Ross back in as a defendant. Due to a similarity in issues, the case was stayed[7] pending resolution of the Tamarack Entities' litigation[8] against Access in Arizona District Court.

On September 3, 2002, the Tamarack Entities prevailed in the Arizona District Court litigation[9] and obtained a judgment against Access in the amount of $955,081 plus pre-judgment and post-judgment interest.  Additionally, on October 16, 2002, the Tamarack Entities obtained a judgment in the amount of $88,657 for attorney's fees and $9,144 for non-taxable expenses.  Access gave the Tamarack Entities a letter of credit as security for the Arizona District Court judgment.[10]  The Arizona District Court's decision was eventually affirmed on appeal.[11]

---

[5] Maricopa County Superior Court Cause No. CV 2000-006173.

[6] Texas County Court Cause No. 99-1459.

[7] Texas County Court entered an order of abatement on December 20, 2001.

[8] Arizona District Court Cause No. CV-1572-PHX-ECH.

[9] Arizona District Court Cause No. CV-1572-PHX-ECH.

[10] Ninth Circuit Court of Appeals Cause No. 02-16994.

[11] The decision was affirmed on February 25, 2004.

On December 12, 2002, the Texas County Court plaintiffs assigned the Texas default judgment against Mr. Ross in Texas County Cause No. 99-1459 to Access.[12] On December 16, 2002, Access filed a motion in Cause No. 99-1459 requesting a turnover order to aid in the collection of the default judgment.

In two separate appeals, Mr. Ross appealed the Texas County Court's holdings.[13] On December 4, 2003, the Texas Court of Appeals affirmed the Texas County Court on the ground that Mr. Ross collaterally, rather than directly, attacked the judgment in Texas, and that the Arizona Superior court only vacated the domesticated foreign judgment and did not void the Texas default judgment for purposes of enforcement in Texas. The Texas Supreme Court subsequently denied review.

On January 15, 2003, the Texas County Court entered a turnover order in Cause No. 99-1459 directing Mr. Ross to provide an accounting and to turn over all of his assets, including his interest in the Tamarack Entities and all funds in any of his accounts, including those held in Arizona. On January 31, 2003, the Texas County Court held Mr. Ross in contempt for failing to appear at a deposition and produce documents related to these assets. The court fined Mr. Ross $100,000 and awarded Access its attorney's fees.

On March 6, 2003, the Texas County Court held Mr. Ross in contempt a second time for failure to comply with the turnover order. The court fined him $250,000 and ordered him incarcerated for 60 days. The court also ordered an additional fine of $25,000 a day until Mr. Ross paid the outstanding fines and complied with the turnover order.

On March 19, 2003, Access filed both of the Texas County Court contempt judgments in Maricopa County Superior Court seeking enforcement pursuant to the Uniform

---

[12] All but two of Access' shareholders assigned their interests in the default judgment to Access on this date. The remaining two assigned their interest to Access on January 28, 2004.

[13] Texas Court of Appeals Cause Nos. 08-03-00079 and 08-03-00080.

- 4 -

Enforcement of Foreign Judgments Act.[14] Mr. Ross filed Rule 60(c) motions to vacate in both cases.

The Maricopa County Superior Court consolidated the actions and held that the contempt judgments were attempts to enforce a judgment that the Arizona court had previously declared void. On August 21, 2003, the court vacated the foreign contempt judgments and awarded Mr. Ross his attorney's fees. The Arizona Court of Appeals overturned the award of attorney's fees. It affirmed the Arizona Superior Court's decision to vacate the contempt judgments on the ground that the two contempt judgments derive from an underlying judgment that was obtained without due process, and Arizona courts are not required to give full faith and credit to judgments obtained in an unconstitutional manner.[15]

Mr. Ross subsequently filed a petition for bill of review[16] in the Texas County Court seeking to have the Texas default judgment set aside. The Texas County Court denied his petition for bill of review.[17] In December of 2003, the Texas Court of Appeals reversed and remanded, finding that a fact question existed as to whether Mr. Ross had showed good cause for failing to exhaust his legal remedies. On remand, the Texas trial court denied the bill of review after a bench trial.

Next, Mr. Ross filed a petition for writ of mandamus seeking to have the Texas County Court's default, turnover, and contempt judgments set aside. His petition was denied by the Texas Court of Appeals[18] on February 27, 2003, and by the Texas Supreme Court[19] on June 5, 2003.

---

[14] Maricopa County Superior Court Cause Nos. CV-2003-005318 and CV-005319.

[15] Arizona Court of Appeals Cause No. 1 CA-CV-03-0736.

[16] This is an equitable action to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or appeal.

[17] Texas County Court Cause No. 03-080.

[18] Texas Court of Appeals Cause No. 08-03-00078.

[19] Texas Supreme Court Cause No. 03-0283.

- 5 -

On February 25, 2004, the Arizona District Court judgment against Access was affirmed by the Ninth Circuit Court of Appeals.[20] On June 18, 2004, Access assigned its interests in all claims against the defendants, including the Texas default judgment, to the National Center for the Employment of the Disabled ("NCED" or "the Plaintiff").

On February 14, 2005, Mr. Ross signed a "Confirmation and Acknowledgment of Assignment of Membership Interest" alleging that early in December of 2002, he assigned 100% of his membership interests in the Tamarack Entitles to the Judith B. Ross Revocable Trust. The document was signed and notarized. The parties dispute whether the transfer took place in early December of 2002, as contended by Mr. Ross, or in 2005 around the time that Mr. Ross signed the document confirming the transfer.

The Plaintiff filed an action in Texas County Court seeking to have Mr. Ross' transfer of his interest in the Tamarack Entities set aside as a fraudulent transfer. Richard Ross, Judith Ross, the Tamarack Entities, and the Judith Ross Irrevocable and Revocable Trusts were all named as Defendants. The case was removed to the United States District Court for the Western District of Texas.[21] Subsequently, the Texas District Court granted the Defendants' motion to change venue and transferred the case to this Court, together with the Plaintiff's Notice of Removal, Second Amended Complaint, and Motion for Partial Summary Judgment.

The Second Amended Complaint seeks: (1) a declaration that the Plaintiff is the owner of the Tamarack Entities' Arizona District Court judgment against Access; (2) a declaration that the Plaintiff is the sole judgment creditor entitled to enforce the Arizona District Court judgment; (3) a declaration that all transfers after the date of the Texas default judgment from Richard Ross to Judith Ross, individually or as trustee of the Judith Ross Revocable and Irrevocable Trusts, are void; (4) a declaration that proceeds from the Tamarack Entities' interest in the Arizona District Court judgment and/or letter of credit are subject to seizure; (5) a permanent injunction preventing the Defendants from gaining access to the proceeds of

---

[20] Ninth Circuit Court of Appeals Cause No. 02-16994.

[21] Texas District Court Cause No. 04-CV-00292-FM.

- 6 -

1 the Arizona District Court judgment and/or letter of credit and preventing the Defendants
2 from taking any action to enforce or collect on the judgment entered by the Arizona District
3 Court in Cause No. CV-1572-PHX-ECH.

4 The Plaintiff's Motion for Partial Summary Judgment asks the Court to hold that the
5 transfer made by Mr. Ross to the Judith Ross Revocable Trust was a fraudulent transfer as
6 defined by the Texas Uniform Fraudulent Transfer Act ("UFTA"). The Plaintiff's motion
7 applies Texas law.

8 On August 16, 2005, the Defendants filed a Cross-Motion for Summary Judgment.
9 The Defendants' Cross-Motion for Summary Judgment asks the Court to hold that the transfer
10 made by Mr. Ross to the Judith Ross Revocable Trust was not a fraudulent transfer, and the
11 Plaintiff cannot prevail on the claims in the Seconded Amended Complaint because the Texas
12 County Court default judgment is void and unenforceable in Arizona. The Defendants'
13 motion applies Arizona law.

14 Having reviewed the file, the Court determined that diversity jurisdiction is not
15 apparent on the face of the parties' pleadings or the Texas District Court's transfer order.
16 Therefore, on March 1, 2006, the Court Ordered the Defendants to show cause why the case
17 should not be remanded for lack of diversity jurisdiction. On March 3, 2006, the Defendants
18 responded to the Order to show cause adequately alleging diversity jurisdiction.

19 On March 9, 2006, the Court Ordered supplemental briefing on several issues related
20 to choice of law and the constitutionality of the Texas judgments. The Court heard oral
21 argument on the parties' motions on March 13, 2006, and again ordered supplemental briefing.
22 The parties' briefs were received on March 20, 2006.

23 II.   LEGAL ANALYSIS AND CONCLUSION
24    A.   Legal Standard

25 The parties have filed cross-motions for summary judgment. The standard for
26 summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under
27 this rule, summary judgment is properly granted when: (1) no genuine issues of material fact
28 remain; and (2) after viewing the evidence most favorably to the non-moving party, the

1  movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*
2  *Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986); *Eisenberg v. Ins. Co. of N.*
3  *Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).

4      The Plaintiff's Motion for Partial Summary Judgment asks the Court to hold that, as
5  a matter of law, the transfer made by Mr. Ross to the Judith Ross Revocable Trust was a
6  fraudulent transfer as defined by the Texas UFTA. The Defendants' Cross-Motion for
7  Summary Judgment asks the Court to hold that, as a matter of law, the transfer made by Mr.
8  Ross to the Judith Ross Revocable Trust was not a fraudulent transfer as defined by the
9  Arizona UFTA, and the Plaintiff cannot prevail on the claims in the Seconded Amended
10 Complaint because the Texas County Court default judgments are void and unenforceable in
11 Arizona.

12     B.   Choice of Law

13     This case was originally filed in the Texas County Court. It was removed to the
14 United States District Court for the Western District of Texas. Next, it was transferred to
15 Arizona District Court pursuant to 28 U.S.C. § 1391(a). The Plaintiff argues that Texas law
16 applies to this case. The Defendants argue that Arizona law applies.

17     In a diversity case, a district court applies the choice-of-law rules of the state in which
18 it sits. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000); *KL Group v. Case, Kay*
19 *& Lynch,* 829 F.2d 909, 915 (9th Cir. 1987). Thus, this Court must apply Arizona's choice-
20 of-law rules. Alternately, the Court finds that because transfer of this action from Texas to
21 Arizona had the effect of curing a defect in personal jurisdiction, Arizona choice-of-law rules
22 should be applied. *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir. 1993).[22]

---

[22] Where a defendant in a diversity case obtains a transfer, the Ninth Circuit distinguishes between cases transferred for convenience of the parties, and those that cure a lack of personal jurisdiction in the transferor district. *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir. 1993); *Nelson v. Int'l Paint Co.,* 716 F.2d 640, 643 (9th Cir.1983). When a transfer is made for the convenience of the parties, the choice-of-law rules of the transferor state generally apply. *Int'l Business Machines Corp. v. Bajorek,* 191 F.3d 1033, 1036-37 (9th Cir. 1999). However, for cases transferred for lack of jurisdiction in the

- 8 -

Arizona has adopted the "most significant relationship" test set forth in the *Restatement (Second) of Conflict of Laws* as its choice-of-law test. *Garcia v. General Motors Corp.*, 195 Ariz. 510, 516-17, 990 P.2d 1069, 1075-76 (Ct. App. 1999). With respect to tort claims, the most significant relationship to the parties and the claim is determined by examining the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Wendelken v. Superior Court,* 137 Ariz. 455, 457, 671 P.2d 896, 898 (1983). These contacts are to be evaluated according to their relative importance with respect to the particular claim at issue. *Id.*

The Plaintiff in this case alleges that it was injured when Defendant Richard Ross transferred his interest in the Tamarack Entities to Defendant Judith Ross Revocable Trust.[23] The sole asset of the Tamarack Entities is the Arizona District Court judgment and/or letter

---

transferor court after October 1, 1982, the action shall proceed as if it had been filed in the court to which it is transferred. 28 U.S.C. § 1631. Judith Ross filed a Motion to dismiss for lack of personal jurisdiction in the Texas District Court. Because the court transferred the case to Arizona pursuant to 28 U.S.C. § 1391(a) on the grounds that "venue is not proper in the Western District of Texas," the court declined to rule on the motion to dismiss for lack of personal jurisdiction. However, in determining that venue was improper in Texas, the court found that: (1) none of the Defendants reside in Texas; (2) the primary events giving rise to the claims did not occur in Texas; and (3) the property at issue is not located in Texas. These findings indicate that there were insufficient minimum contacts between Defendant Judith Ross and the State of Texas for purposes of personal jurisdiction. The parties' briefing on this issue has not provided any facts or evidence that would suggest that the Texas district court had personal jurisdiction over the Tamarack Entities or Judith Ross. *See, e.g, Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997) (due process requires that nonresident defendants have certain minimum contacts with the forum state). Additionally, all parties agree that transfer to this Court cured any defects in personal jurisdiction. The Court finds that the Texas District Court cured a defect in personal jurisdiction by transferring the action to Arizona District Court. Thus, Arizona is the proper forum state for this action and Arizona substantive law applies.

[23] The Judith Ross Revocable Trust was amended to create the Judith Ross Irrevocable Trust. The Judith Ross Revocable Trust no longer exists.

- 9 -

of credit given as security for this judgment. This "property" is located in the State of Arizona. The transfer of Richard Ross' interest in the Tamarack Entities to the Judith Ross Irrevocable Trust took place in the State of Arizona.

The Tamarack Entities are Arizona limited liability companies. The sole member of both entities is Defendant Judith Ross Irrevocable Trust.[24] The trustees of the Judith Ross Irrevocable Trust are Defendants Judith and Richard Ross and their son Peter Ross. Defendants Richard Ross and Judith Ross are married and reside in Scottsdale, Arizona. Peter Ross is not a party to this action and has no alleged connections to the State of Texas.

The Plaintiff, a Texas nonprofit corporation with a principal place of business in Texas, is seeking to have the Arizona transfer set aside, so that it can satisfy a series of Texas judgments that the courts of Arizona have already refused to enforce. Although this action was originally filed in Texas, it was transferred to Arizona on the basis that venue was improper in Texas. The Texas District Court held that it "disagrees with the Plaintiff's argument that this judicial district has a substantial connection to its fraudulent transfer claim merely because of the judgment entered here by an El Paso County Court at Law." The court found that the Texas default judgment was the only event that occurred in Texas, and a substantial portion of the events giving rise to the Plaintiff's claims took place in Arizona.

This Court agrees. All of the Defendants in this case are located in Arizona. There have not been any allegations that any of the Defendants in this case engaged in business in the State of Texas, or have ties to the State of Texas, that are relevant to the Plaintiff's claims in this action. The alleged fraudulent transfer in this case took place in Arizona. And the property (the Arizona District Court judgment) that the Plaintiff seeks to reach by setting aside the transfer in this case is located in the State of Arizona. Having considered all of the above factors, the Court finds that the State of Arizona, rather than the State of Texas, has the most significant relationship to the claims and the parties in this action. Therefore, the Court concludes that Arizona substantive law governs.

---

[24] The Judith Ross Revocable is now the Judith Ross Irrevocable Trust.

C.  Fraudulent Transfer

Both parties in this case move for summary judgment on the issue of whether the transfer by Richard Ross of his interest in the Tamarack Entities was a fraudulent transfer according to the UFTA.  The Plaintiff seeks partial summary judgment on the question of whether the transfer was made "without receiving reasonably equivalent value."  The Defendant seeks summary judgment on the Plaintiff's Complaint on the grounds that the Plaintiff's only asserted interest in the alleged transfer derives from a void judgment.

The Plaintiff is a "creditor" under Arizona's UFTA if it has a "claim" to the property. Ariz. Rev. Stat. Ann. ("A.R.S.") § 44-1001(3) (West 2003 & Supp. 2004).  To set aside a transfer as fraudulent under the UFTA, there must have been a valid claim at the time of the transfer.  *Hullett v. Cousin,* 204 Ariz. 292, 296, 63 P.3d 1029, 1033 (2003).  In other words, there must have been a "right to payment."  *Id.*

The Plaintiff's Second Amended Complaint alleges that "Any transfer by Richard Ross to his wife Judith Ross, Individually and as Trustee, was in violation of a valid and subsisting Turnover Order against Richard Ross entered in [Texas County Court Cause No. 99-1459] as part of attempts to collect on a judgment against Ross in that cause."  In other words, the Plaintiff's sole alleged "right to payment" in this case is derivative of the January 21, 2000, Texas County Court default judgment against Richard Ross and the subsequent contempt judgments arising from Mr. Ross' failure to turn over assets located in Arizona to satisfy the Texas County Court judgments.

The Plaintiff argues, and this Court agrees, that these judgments are not valid or enforceable under Arizona law.  It is undisputed[25] that Richard Ross was never personally

---

[25] In a footnote in the Plaintiff's Reply to the Defendants' Cross-Motion for Summary Judgment, the Plaintiff mentions that it provided Mr. Ross' attorney in the Arizona District Court litigation with "actual notice" that it was filing the Texas County Court lawsuit.  It is not disputed that Mr. Ross did not give his attorney authority to accept service of process on his behalf for the Texas County Court Case.  It is also undisputed that neither a summons nor a complaint were served on Mr. Ross or anyone who had authority to accept service on his behalf.  *See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350, 119

- 11 -

1 served with a summons and a complaint in the case leading to the Texas default judgment.
2 When the Plaintiff attempted to domesticate and enforce the judgment in Arizona, on August
3 8, 2000, the Maricopa County Superior Court found insufficient service of process on Mr.
4 Ross and ordered "that the foreign judgment filed herein by plaintiffs in Cause No. 99-1459
5 in the County Court at Law Number 7, El Paso County, Texas, is void and hereby vacated."
6 *Brooker v. Ross,* CV 2000-006173 (Ariz. Sup. Ct. Aug. 08, 2000).

7 Subsequently, when the Plaintiff attempted to domesticate and enforce the contempt
8 judgments, on November 12, 2004, the Arizona Court of Appeals rejected the argument that
9 Arizona courts are required to treat the judgments "as separate valid judgments issued by the
10 State of Texas," rather than focusing on the underlying nature of the default judgment.
11 *Access Healthsource, Inc. v. Ross,* No. 1 CA-CV 03-0736 (Ariz. Ct. App. Nov. 12, 2004).
12 The Arizona Court of Appeals held that the underlying Texas default judgment was obtained
13 without due process, and because the contempt orders derive from the default judgment, they
14 "suffer from the same defect -- they essentially require Ross to relinquish his property in
15 violation of due process." *Id.* Further, the court held that because the validity of the
16 judgments has "actually been adjudicated in Ross' favor in a contested action in Arizona, that
17 judgment is res judicata in this state." *Id.* (citing *Giehrl v. Royal Aloha Vacation Club, Inc.,*
18 188 Ariz. 456, 458, 937 P.2d 378, 380 (App. 1997) (Nevada determination after contested
19 proceeding finding that Texas lacked jurisdiction to enter default judgment is entitled to full
20 faith and credit in Arizona over Texas determination of its own jurisdiction in uncontested
21 default proceedings).

22 A claim is "a right to payment, whether or not the right is reduced to judgment,
23 liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

---

25
26 S.Ct. 1322, 1327 (1999) (in the absence of service of process, or waiver of service by the
defendant, a court ordinarily may not exercise power over that party); *Omni Capital Int'l Ltd.*
27 *v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409 (1987) (service of a summons
is the procedure by which a court asserts personal jurisdiction over a party; therefore, mere
28 notice to a defendant is insufficient, there must be service of a summons and complaint).

- 12 -

equitable, secured or unsecured." A.R.S. § 44-1001(2). *United States v. Ranch,* 50 F.3d 630, 632 (9th Cir. 1995). The UFTA's definition of "claim" is unquestionably broadly worded. A.R.S. § 44-1001(2); *Hullett,* 204 Ariz. at 297, 63 P.3d at 1034. Nevertheless, the Arizona Supreme Court has held that to qualify as a "right to payment" under the UFTA the claim asserted must be an **enforceable obligation**. *Hullett,* 204 Ariz. at 297, 63 P.3d at 1034; *see also Cohen v. De La Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 1216 (1988) (a right to payment is nothing more nor less than an enforceable obligation). Regardless of whether one characterizes the judgments at issue in this case as "void," or "voidable," the Arizona Court of Appeals has already held that they are **not enforceable,** and that the invalidity of the judgments is res judicata in Arizona.

In response to this Court's request for supplemental briefing, all parties agreed that regardless of whether the Texas courts have held that the judgments are enforceable in the State of Texas, this Court is not required to give full faith and credit to the judgments if the Court believes doing so would violate the Defendants' constitutional rights. However, the Plaintiff suggests that the notice afforded to Mr. Ross after the entry of default was sufficient to satisfy the requirements of the Due Process Clause. The Court disagrees.

Providing Mr. Ross with notice after the entry of default judgment did not "wipe the slate clean" by restoring Mr. Ross to the exact same position he would have occupied had he been afforded due process in the first place. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965). Had Mr. Ross been served with a summons and a complaint in Texas County Court Cause No. 99-1459, the Plaintiffs in that proceeding would have been required to prove all elements of their claims. Instead, a default judgment was entered against Mr. Ross in excess of $10,000,000.[26] The underlying default judgment has led to derivative

---

[26] $10,000,000 plus pre-judgment interest in the amount of $369,863, post-judgment interest at a rate of 10% per year until paid, and $15,000 in attorney's fees.

- 13 -

contempt judgments and fines that continue to accrue at a staggering rate.[27] There can be no doubt that at a minimum the Due Process Clause requires that a deprivation of such property by adjudication must be **preceded by** notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656 -57 (1950).

Notice that is reasonably calculated under the circumstances to notify interested parties of the pendency of an action and afford them the opportunity to present their objections is a fundamental requirement in any court proceeding that might result in the deprivation of life, liberty, or property. *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 899 (1988). Failure to give such notice violates the most rudimentary demands of due process. *Id.* The Texas County Court plaintiff's failure to serve Mr. Ross deprived him of notice at a meaningful time and in a meaningful manner such that he would have had a fair opportunity to be heard and to present his defenses. Failure to give Mr. Ross such notice violated his right to due process of law. *See Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190 (1965).

Our Supreme Court has made it clear that judgments that are entered without service violate the Due Process Clause and are constitutionally infirm. *Peralta,* 485 U.S. at 84, 108 S.Ct. at 899. The Plaintiff cannot breathe life back into the constitutionally infirm Texas County Court judgments by alleging that the Defendants violated the Arizona UFTA by transferring assets following the issuance of the Texas County Court turnover order. The turnover order, like the contempt judgments, is derivative of the Texas County Court default judgment. To allow the Plaintiff in this case to use the Arizona UFTA as a means to enforce judgments that were entered without service of process would deprive Richard Ross of property in a manner that is contrary to the most basic tenets of due process.

---

[27] In January Ross was held in contempt and fined $100,000. The second contempt judgment, issued on March 4, 2003, fined Ross $250,000, ordered him jailed for 60 days, and ordered an additional fine thereafter of $25,000 dollars a day until Ross paid the fine and complied with the prior court orders.

- 14 -

The Plaintiff in this case has failed to show that he has a "right to payment" under the UFTA. *Cohen,* 523 U.S. at 218, 118 S.Ct. at 1216 (a "right to payment" is an enforceable obligation); *Hullett,* 204 Ariz. at 297, 63 P.3d at 1034 (a "claim" as defined by Arizona's UFTA must be an enforceable obligation). Arizona's UFTA is remedial and does not serve as a means to create a new claim or right to payment. *Clark v. Rossow,* 134 Ariz. 490, 491, 657 P.2d 903, 904 (App.1982). Where, as here, there is no enforceable claim, the UFTA does not provide the Plaintiff with a remedy. *Id.* Only a "creditor," one who has a valid claim and right to payment, may attack a conveyance as fraudulent. *Id.*

This Court is not obligated to give full faith and credit to judgments that were obtained in an unconstitutional manner. The Court finds that the Plaintiff has failed to show a right to payment upon which to base its claims. The Plaintiff is not a creditor as defined by the UFTA and has no grounds to challenge Mr. Ross' transfer of his interest in the Tamarack entities. Likewise, the Plaintiff has failed to show any interest in the Tamarack Entities or the Arizona District Court Judgment that would entitle it to declaratory and injunctive relief requested in the its Complaint.

Accordingly,

/ / /

1    IT IS ORDERED denying the Plaintiff's Motion for Summary Judgment (doc. 36).

2    IT IS FURTHER ORDERED granting the Defendants' Motion for Summary Judgment
3 (doc. 47). The Clerk of the Court is directed to enter judgment in favor of the Defendants and
4 against the Plaintiff.

6    DATED this 24th day of March, 2006.

_____
James A. Teilborg
United States District Judge

- 16 -